# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**DAVID MARSHALL, #450150**                    **CIVIL ACTION**

**VERSUS**                                     **NO. 05-2159**

**TERRY TERRELL, WARDEN**                      **SECTION "A" (6)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the Magistrate Judge has determined that this matter can be disposed of without an evidentiary hearing.

The undersigned Magistrate Judge previously issued a Report & Recommendation in this matter recommending that the State's asserted defense that the federal petition was time-

barred be rejected and that the State be ordered to file a supplemental response on the merits (Rec. Doc. 10) . The district judge approved and adopted the Report & Recommendation and ordered the State to file a supplemental answer on the merits of petitioner's claims. (Rec. Doc. 11). The State filed that response on January 25, 2007 (Rec. Doc. 12).

The full state procedural history of this case was previously discussed in detail in this court's first Report & Recommendation, issued on September 26, 2006, and will not be repeated herein. Suffice it to say that petitioner David Marshall was found guilty by a jury of second degree kidnapping on January 9, 2002 in the Twenty-Fourth Judicial District Court for the Parish of Jefferson, Case # 01-2757 "B." On June 18th, 2003, he was sentenced (in a re-sentencing) to serve fifteen years imprisonment at hard labor with credit for time served. Marshall completed his direct appeal process in the state courts in June 2003 and his post-conviction process in May 2005.

Before the court are the following issues raised by Marshall: 1) Whether the State used perjured testimony to fabricate a case against petitioner and whether the trial court was biased; 2) whether the State withheld *Brady* evidence and whether there was sufficient evidence to convict; 3) whether evidence of another crime was improperly introduced at trial; 4) whether petitioner received ineffective assistance (this claim contains various sub-parts); and, 5) whether petitioner received an excessive sentence. The court will address each claim in turn.

## **Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal *habeas corpus* legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1) and questions of fact are reviewed under § 2254(d)(2). *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The United States Supreme Court has noted:

> § 2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in *Williams[ v. Taylor*, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

*Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 1850, 152 L.Ed.2d 914 (2002) (citations

3

omitted). *See also*, *Shriro v. Landrigan*, -- U.S.--, 127 S.Ct. 1933, 1939, 167 L.Ed.2d 836 (2007)( "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.")

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *see also Hill*, 210 F.3d at 485; 28 U.S.C. § 2254(e)(1).

<u>Factual Background</u>[1]

This case arises out of an incident that occurred in March 2001, when defendant, David Marshall, dragged his ex-girlfriend, Shedanna Smith, by the hair into his house, physically abused her, and locked her in a bedroom with burglar bars for several hours.

Officer Brian LaBruzza responded to a dispatch on March 2, 2001, at 1629 Garden Road. The call concerned a woman who had been beaten and locked in a bedroom against her will. He was advised that the perpetrator left the premises in a dark-colored Chevrolet vehicle. However, when he arrived, he saw that the vehicle was there and surmised that the perpetrator and the victim were still inside. At the same time, Officer LaBruzza remembered that he had previously been to this address to handle another domestic abuse incident.

When he approached the residence, he saw that the front door was open. After a brief struggle, Officer LaBruzza arrested the defendant and went back into the house to check on the victim, Shedanna Smith. He found her and some

---

[1]The facts are taken from the appellate opinion in *State v. Marshall*, 841 So.2d 866 (La. App. 5th Cir. 2003). Having reviewed the transcript of trial, the court finds the facts as stated are well-supported by the record. Two footnotes from the opinion are omitted as they do not affect the factual accuracy of the events in question.

children extremely upset and together in the back bedroom. Officer LaBruzza observed and photographed Ms. Smith's injuries which included a swollen right eye and multiple bruising about her body, legs, and back. Ms. Smith was taken to East Jefferson General Hospital for medical attention. A relative came to the house and took the children away.

Officer LaBruzza described the scene as "chaotic" and "pretty violent." He observed that the windows of the bedroom in which Ms. Smith was held were secured by burglar bars, that the bedroom door could only be unlocked from the outside, that the front door was dead-bolted, and that Ms. Smith did not have a key. Additionally, there was no working telephone in the house.

On June 6, 2001, the Jefferson Parish District Attorney filed a bill of information charging defendant, David Marshall, with the second degree kidnapping of Shedanna Smith in violation of La. R.S. 14:44.1.  Defendant was arraigned on June 7, 2001 and pled not guilty. On October 31, 2001, the state filed a notice of intent to use evidence of other crimes. In that notice, the state detailed a prior incident in which defendant physically attacked his daughter, Bianca Lewis, on October 13, 2000. The state also asserted that the purpose of using the other crime was to show defendant's knowledge, intent, guilty knowledge, system and motive. At the *Prieur* hearing, the state produced Officer Brian LaBruzza as a witness.  Following the *Prieur* hearing on January 7, 2002, the trial court ruled that the other crimes evidence was admissible.

Officer Brian LaBruzza testified at the hearing and at trial that, on October 13, 2000, he responded to a dispatch at 1423 31st Street involving a man, later identified as defendant, who had physically abused his daughter, Bianca Lewis. After Officer LaBruzza arrived at the scene and interviewed a female witness. He subsequently went to defendant's house, 1629 Garden Street, approximately one block away. When he arrived, he saw Miss Lewis hiding inside a van. Officer LaBruzza asked Miss Lewis to exit the van and he observed physical injuries including a contusion to her eye, bumps and bruises all over her body, and a welt on her legs and her back. Officer LaBruzza interviewed Miss Lewis and went inside the house to look for defendant. He found defendant, interviewed him then placed him under arrest.

Bianca Lewis, corroborated the October 13, 2000, incident as well as the events giving rise to appeal. Miss Lewis testified that around March 1, 2001, she saw her father pick up Ms. Smith, throw her down on the sofa, and hit her in the face and other places. Miss Lewis was scared, so she went back into the

bedroom with the other children. Her father subsequently brought Ms. Smith into the bedroom. He told Ms. Smith to look at the children, and he continued hitting her. Miss Lewis' father subsequently started cutting off Ms. Smith's hair and fingernails, stating that he did not pay for them. She saw Ms. Smith fall to the floor complaining of chest pains. Miss Lewis was able to call Ms. Smith's mother to tell her what happened, before her father brought her home.

Before she left, Ms. Lewis observed defendant lock the doors with his keys. Ms. Smith had a set of keys to the house but not with her. Miss Lewis testified there were burglar bars on the windows, that there was no way out of the house except through the front and back doors and that her father had taken Ms. Smith's cell phone. When Miss Lewis left the house, Ms. Smith was still in the bedroom.

The victim, Shedanna Smith, testified at trial that she was 21 years old, and that defendant was her ex-boyfriend. She and defendant began dating in July of 1997, and a year later, they moved in together. Ms. Smith worked for McDonald's from 1999 to 2001. She testified that, at first, their relationship was fine, but later defendant began to complain about everything. Defendant did not approve of the way Ms. Smith dressed and at times, he would tell her what to wear. In the first year they were together, defendant worked a lot as a truck driver. However, defendant subsequently could not work due to his high blood pressure. Therefore, Ms. Smith was the sole source of income when she lived with defendant. Ms. Smith also testified about the other crimes incident occurring on October 13, 2000, involving Miss Lewis.

As to the criminal conduct at issue in this case, Ms. Smith stated that defendant pulled her hair from the back and dragged her inside the house. He threw her on the sofa and punched her in the face. He told one of his daughters to grab a stick. When he got the stick, defendant continually hit Ms. Smith on her leg and arm with it. Subsequently, defendant dragged Ms. Smith into the children's bedroom.

The next morning, defendant woke up and got the children ready for school. He told Ms. Smith to write an essay on where she had been for the past two months. Defendant brought the children to school. Ms. Smith tried to get out of the house, but all the doors were locked and there were bars on every window. She had keys to the house, but not with her. There was no telephone, and defendant had taken away her cell phone. She was afraid to break a window for fear there would be negative repercussions. Nevertheless, had Ms.

Smith somehow been able to climb out of a window despite the bars she felt she could not because her legs were in excruciating pain.

Michael Marshall testified on behalf of defendant, his younger brother. Mr. Marshall stated that his brother's house had burglar bars when defendant moved in. Thus, he did not think defendant put the bars on the windows. Mr. Marshall testified that the back door was "never really locked," and that if someone did lock it, the lock would "pop right open."

<u>Perjury and Trial Judge Bias/Confrontation Clause Violation</u>

Petitioner first argues that the investigating officer committed perjury on the stand when he testified that the bedroom door was locked from the outside, and the front door was dead-bolted. Petitioner contends these statements mislead the jury into believing that the victim could not remove herself from the bedroom or from the home.[2]

The State, in response, asserts that petitioner's claim is procedurally barred from review because the last reasoned decision in the state court relied upon a state procedural bar in denying relief.  Specifically, Marshall raised the perjury claim, i.e., that the testifying officer gave false information before the jury and the State allowed the information to be elicited although it was known to be false, in his post-conviction application filed with the state trial court on March 22, 2004. The trial court ruled as follows:

> In his first assignment of error, the defendant alleges that the State knowingly used perjured testimony when Police Officer

---

[2]The Officer's statements relative to the security of the property and whether the victim could escape can be found at pp. 30-31 (on direct exam) and pp. 37-42 (on cross exam), Trial Transcript dated January 7-9, 2002, State Rec. Vol. 2.

Brian Labruzza gave false and misleading testimony. Upon review, this Court finds that defendant's claim is without merit. First, defendant has failed to meet his burden in proving that the alleged perjured testimony prejudiced the jury. Further, Defendant has failed to show that the omission of Mr. Labruzza's testimony would have resulted in a substantially different outcome in defendant's case.

Also, the Court in *Talley v. Maggio*, 451 So.2d 1358 (La. App. 4th Cir. 6/29/84), addressed this very issue. The court found that defendant's argument lacked merit because there was no contemporaneous objection to the testimony. Additionally, the court found the inconsistency of the witnesses testimony was not assigned as error in defendant's appeal. Thus, the Court held that even if these objections were not waived, the defendant's argument assails the credibility of the witnesses' testimony which is an issue resolved by the jury at trial. Thus, the Court ruled that the claim had no merit. Based upon the foregoing reasons, this Court finds that defendant's claim is without merit.[3]

In sum, after reviewing the trial court's reasons for denying relief to Marshall on this claim, that court relied first on Marshall's failure to meet his burden of proof, i.e., the merits, and second on the fact that Marshall had failed to contemporaneously object to the testimony so as to preserve the issue for appeal, i.e., procedural grounds. Additionally, the court's decision relied upon the failure of petitioner to raise the perjured testimony as an assignment of error on appeal (procedural) and the fact that even if there were no procedural grounds to bar the claim, the issue involved credibility determinations that were properly in the hands of the jury (merits). The trial court's ruling was affirmed by the intermediate appellate court

---

[3]*See* State Rec. Vol. 1, Order dated March 30, 2004.

as well as by the Louisiana Supreme Court.[4]

"A state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim." *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999). Even if the trial court addressed the merits of the claim, "'[t]he rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default.'" *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) (*quoting Cook v. Lynaugh*, 821 F.2d 1072, 1077 (5th Cir.1987)). A showing of "cause" requires that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," such as "the factual or legal basis for a claim was not reasonably available to counsel, or that some interference by officials made compliance impracticable." *Smith v. Quarterman*, 515 F.3d 392, 403, (5th Cir. 2008), citing *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986).  As for prejudice, the petition must show "not merely that the errors ... created a possibility of prejudice, but that they worked to his actual and substantial

---

[4]*See* State Rec. Vol. 1,  *Marshall v. Andrews*, 04-KH-701 (La. App. 5th Cir. June 23, 2004)(finding "no error in the trial court's ruling of March 30, 2004") , and, *State ex rel. Marshall v. State*, 901 So.2d 1092 (2004-KH-1963) (La., May 6, 2005)(Louisiana Supreme Court ruled simply, "Denied".)  If the last state court reviewing the matter "summarily affirms a lower court judgment denying relief, the federal court looks to the last explained decision to determine whether it was decided primarily upon a state procedural bar." *Corwin v. Johnson*, 150 F.3d 467, 473 (5th Cir. 1998), citing *Ylst v. Nunnemaker*, 501 U.S. 797, 802-04 and n.3, 111 S.Ct. 2590, 2595 and n.3, 115 L.Ed.2d 706 (1991). The last reasoned decision on this claim was the trial court's March 30, 2004 ruling.

disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.*, citing *Murray*, 477 U.S. at 493, 106 S.Ct. 2639.  Petitioner has not filed any rebuttal to the State's claim that he has procedurally defaulted his perjured testimony claim and fails specifically to address the "cause" and "prejudice" requirements.  Therefore, this claim is procedurally barred from federal review.

Marshall also argues in his second part of claim one that he was subjected to the bias of the trial judge.  This claim is based upon a couple of incidents which occurred on the day of trial.  For example, petitioner points to the trial judge's statement that he would be "bound and gagged" because the judge noticed Marshall looking at his daughter while she was getting ready to testify against him.[5]  He also claims that the trial judge was made aware of certain potentially exculpatory facts by the victim of which the jury was not made aware.[6]

It is not entirely clear, but it appears that petitioner is attempting to claim that the trial court's comments that he would be bound and gagged amounts to a denial of the right to

---

[5]See State Rec. Vol. 2, Trial Transcript at p. 46-47.  The record shows that the trial judge called Marshall's counsel up to the bench and warned that Marshall was not to try to talk to the witness or to look at her when she was on the witness stand. The judge indicated that she had already caught Marshall in the act and she would have him bound and gagged if he persisted.  At another point during trial, the judge also threatened to have Marshall bound and gagged when he persisted in talking after his objection had been noted for the record.  Trial Transcript at p. 78-79. The trial judge informed counsel for Marshall that he could put on the record the basis of his client's objections after the jury had been released for lunch. There is no evidence that either reference to being bound and gagged was made in front of the jury.

[6]Marshall alleges but fails to support his claim with any evidence that the victim left the residence where she was being held captive and that the trial judge was aware of this fact.

confront and cross-examine witnesses.[7]  The Confrontation Clause of the Sixth Amendment, made applicable to the States through the Fourteenth Amendment, provides, "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." *Maryland v. Craig*, 497 U.S. 836, 110 S. Ct. 3157, 111 L. Ed.2d 666 (1990); *see also*, *Davis v. Alaska*, 415 U.S. 308, 315-16, 94 S. Ct. 1105, 1109-10, 39 L. Ed.2d 347 (1974)(Confrontation Clause guarantees criminal defendants the opportunity to cross-examine witnesses against them.)  While the Confrontation Clause certainly contemplates defendant's right to come face-to-face with his accuser, that right is not absolute.  *Craig*, 497 U.S. at 844, 110 S. Ct. at 3163.  ". . . [T]he right to confront and to cross-examine  is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."  *Id., citing Chambers v. Mississippi*, 410 U.S. 284, 295, 93 S.Ct. 1038, 1045, 35 L. Ed.2d 297 (1973).  However, even where a face-to-face confrontation is denied to further an important public policy, the reliability of the testimony must still be assured.  *Craig*, 497 U.S. at 850, 110 S. Ct. at 3166.

In petitioner's case, he was threatened with being bound and gagged and told not to

---

[7]In his federal petition, Marshall appears to argue that he was subjected to the trial judge's bias when he was threatened that he would be bound and gagged and told not to look at the victim. He does not argue that the Confrontation Clause was violated. In his state post-conviction application, however, he specifically mentioned the Confrontation Clause, claiming that the Judge's actions prohibited him from cross-examining his accuser. *Compare* Fed. Rec. Doc. 1 (Petition) with State Rec. Vol. 1, Application and Memorandum In Support of Post Conviction relief dated March 22, 2004 at p. 4.  The court addresses both contentions.

look at the victim. He was never actually bound and gagged nor was he ever removed from the courtroom.  The record makes clear that the trial judge was concerned primarily with managing her own courtroom and maintaining decorum, preventing Marshall's individual outbursts and requiring him to make his objections through his attorney, and keeping the 14 year old witness, Bianca Lewis, from being intimidated by her abusive father.  Petitioner makes no showing that his lawyer's cross-examination of the victim was in any way compromised nor does he show that the jury was aware of the trial judge's admonitions, making such threats prejudicial before the jury.  "[T]he balancing of the defendant's confrontation right with the need for the proper administration of justice is a task uniquely suited to the trial judge ... and ... a trial court has a significant interest in 'dignity, order, and decorum in its courtroom".  *Gray v. Moore*, – F.3d. –, 2008 WL 782467 (6th Cir., March 28, 2008), citing *Scurr v. Moore*, 647 F.2d 854, 858 (8th Cir. 1981) and *Illinois v. Allen*, 397 U.S. 337, 90 S. Ct. 1057, 25 L. Ed. 2d 353 (1970). Petitioner makes no showing that the state trial judge's decision denying his claim that the Confrontation Clause was violated was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

Similarly, petitioner fails to show that the trial judge's actions were influenced by her own feelings of bias against him.  "Defendants in the American judicial system have the right to a fair trial, and part of this right is fulfilled by a judicial officer who impartially presides over the trial." *Bunction v. Quarterman*, – F.3d –, 2008 WL 1023202 (5th Cir., April 11, 2008),

*citing Bracy v. Gramley*, 520 U.S. 899, 904-05, 117 S. Ct. 1793, 1797, 138 L. Ed.2d 97 (1997). However, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard." *Id.*   A judge will, however, violate a defendant's due process rights if he is biased against the defendant or has an interest in the outcome of the case. *Id.* A likelihood or appearance of bias can disqualify a judge as well. *Id., citing Taylor v. Hayes*, 418 U.S. 488, 501, 94 S. Ct. 2697, 41 L. Ed.2d 897 (1974). "In cases where the defendant is alleging actual bias... [he must] show a deep-seated, extreme favoritism or antagonism." *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 127 L. Ed. 2d 474 (1994).  A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him." *Buntion*,  – F.3d –, 2008 WL 1023202 at *6, *citing Edwards v. Balisok*, 520 U.S. 641, 647, 117 S.Ct. 1584, 137 L.Ed.2d 906 (1997).

As previously explained, the comments made by the trial judge and challenged by Marshall do not satisfy the standard established for demonstrating judicial bias.  The trial judge was merely trying to control her own courtroom and to prevent witness intimidation. This court has reviewed the trial transcript in its entirety and finds no evidence of judicial bias.  Moreover, the alleged comments which Marshall claims the victim made to the judge outside of the jury's presence are  unsupported by the record.   Marshall fails to show any evidence of judicial bias. This claim is without merit.

13

<u>Brady Claim/Insufficient Evidence</u>

Petitioner states, "Other than 'other crimes' evidence and the witness's statements. . . and 'a few scrapes and bruises',  the state had no case against the Petitioner." Much of petitioner's argument on this claim is aimed at the "other crimes" evidence which the court will discuss in another section of this opinion.  As to alleged *Brady* evidence,[8] the only pieces of evidence which Marshall claims were actually withheld from the defense are pictures which were alleged to be in the possession of the prosecution and allegedly would have shown that "not all of the house had burglar bars, and the back door was not at all operable by the lock that was on it".[9]

In the last reasoned state court decision addressing this *Brady* claim, the state trial judge found as follows:

> In his third assignment of error, defendant alleges that evidence that the back door was broken was withheld.  This claim is denied because defendant was aware of the alleged fact that the back door was broken since he lived in the home, thus, this evidence was not withheld from him at the time of trial."[10]

"The prosecution's suppression of evidence favorable to the accused violates the Due Process Clause if the evidence is material either to guilt or to punishment".  *Kopycinski v.*

---

[8]*Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963).

[9]Rec. Doc. 1, Petition at p. 12.

[10]State Rec. Vol. 1 of 4, Order dated March 30, 2004.

*Scott*, 64 F.3d 223, 225 (5th Cir. 1995), citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1197, 10 L. Ed.2d 215 (1963).  To prevail on his *Brady* claim, a habeas petitioner must show that (1) the prosecution suppressed evidence, (2) the evidence was favorable to the defense, and (3) the evidence was material to either guilt or punishment.  *Lawrence v. Lensing*, 42 F.3d 255, 257 (5th Cir. 1994).  "Evidence is not 'suppressed' if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence." *Lawrence,* 42 F.3d at 257 (citation and internal quotation marks omitted).  *See also, e.g.*, *Williams v. Scott*, 35 F.3d 159, 163 (5th Cir.1994), *cert. denied*, 513 U.S. 1137, 115 S. Ct. 959, 130 L. Ed.2d 901 (1995) ("A *Brady* violation does not arise if the defendant, using reasonable diligence, could have obtained the information"); *Blackmon v. Scott*, 22 F.3d 560, 564-65 (5th Cir.), *cert. denied*, 513 U.S. 1060, 115 S. Ct. 671, 130 L. Ed.2d 604 (1994) ("The state is not required to furnish a defendant with exculpatory evidence that is fully available to the defendant or that could be obtained through reasonable diligence"); *Duff-Smith v. Collins*, 973 F.2d 1175, 1181 (5th Cir.1992), *cert. denied*, 507 U.S. 1056, 113 S. Ct. 1958, 123 L. Ed.2d 661 (1993); *May v. Collins*, 904 F.2d 228, 231 (5th Cir.1990), *cert. denied*, 498 U.S. 1055, 111 S. Ct. 770, 112 L. Ed.2d 789 (1991).

In this case, as noted by the state trial judge, petitioner was familiar with the house in question and whether there were locks or broken doors present.  He and his lawyer were fully capable of taking their own photographs or offering testimony about the physical state of the house where the victim was held.  In fact, the defense did offer the testimony of petitioner's

brother, Michael Marshall, who testified that he did not think David Marshall put the burglar bars on the windows but that they were always there.  He further reported that "the back door was never really locked.  You can lock it.  If you play with it enough, it would pop open."[11] Marshall makes no showing that the evidence was suppressed.  Moreover, it appears the information was readily available to the defense and they chose not to pursue it any further than to use the testimony of Michael Marshall, petitioner's brother and to cross-examine the State's witnesses.  The trial court's decision to deny relief on this claim is not contrary to Supreme Court law as established in *Brady v. Maryland*, 373 U.S. at 87, 83 S. Ct. at 1197. This claim is without merit.

    With regard to the challenge to the sufficiency of the evidence, the State argues that the claim is procedurally defaulted since the trial court indicated the claim, along with the claim of perjured testimony, had not been raised on appeal and thus was waived.[12] The State's argument appears correct and petitioner has not shown "good cause" or "prejudice"to excuse  his procedural default   However it is also worth noting that Petitioner's claim that his issue involves "sufficiency of evidence" is somewhat of a misnomer.  Petitioner makes no real challenge to possible evidentiary deficiencies or omissions under the standard set

---

[11]State Rec. Vol. 3, Trial Transcript at pp. 208-09.

[12]*See* State Rec. Vol. 1, Order dated March 30, 2004.

forth in  *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1976).[13]

 Rather, he claims that the testimony offered by the State was not credible or at least was

inconsistent.  A reviewing *habeas* court does not revisit determinations of credibility for such

issues are properly left to the province of the jury.  *Pemberton v. Collins*, 991 F.2d 1218,

1225 (5th Cir. 1993), *cert. denied*, 510 U.S. 1025, 114 S. Ct. 637, 126  L. Ed. 2d 596 (1993).

The AEDPA requires that the court presume that the jury's finding is correct unless rebutted

by clear and convincing evidence."  28 U.S.C. Section 2254 (e)(1).  Based upon a review of

the evidence that was before the jury, this court cannot say that the jury's verdict and

evaluations of credibility were unreasonable or unsupported by the record. Marshall is

therefore not entitled to relief on this claim.

.                                    <u>Other Crimes Evidence</u>

Petitioner contends that the trial judge admitted other crimes evidence which only

depicted him to be a bad person and served no acceptable purpose under the exceptions

outlined in *State v. Prieur*, 277 So.2d 126 (La. 1973). Petitioner only argues state law and

jurisprudence in support of this claim, neither of which are relevant for federal habeas

purposes.

In federal habeas proceedings concerning a state-court decision, federal courts do not

---

[13].The *Jackson* test requires a reviewing court to find that no rational trier of fact, after viewing the record in the light most favorable to the prosecution, could have found all the elements of the crime proved beyond a reasonable doubt.  *Id.,* at 319.

review the admissibility of evidence under state law. *Lampton v. Cain*, 2008 WL 638186, *1 (5th Cir., March 7, 2008), citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir.1992).  Thus, to the extent that Marshall is claiming a violation of state evidence rules, that argument is not cognizable on habeas.  *Estelle v. McGuire*, 502 U.S. 62, 67068, 112 S.Ct. 475, 116 L.Ed. 2d 385 (1991). A state court's evidentiary ruling may, however, present a cognizable federal habeas claim if the ruling results in a "denial of fundamental fairness"  *See Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998); *Pemberton*, 991 F.2d at 1226. (5th Cir.1993).  The erroneous admission of prejudicial evidence will justify habeas relief only if the admission was a crucial, highly significant factor in the defendant's conviction. *Wood v. Quarterman*, 503 F.3d 408, 414 (5th Cir. 2007), *cert. denied*, – S.Ct. –, 2008 WL 102421 (April 14, 2008); *Neal*, 141 F.3d at 214; *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

The "other crimes" evidence which Marshall complains of consists of the testimony admitted regarding an October 13, 2000 incident in which the defendant physically battered his daughter, Bianca Lewis. The testimony regarding this "other crime" came from Officer LaBruzza, Bianca Lewis and Shedanna Smith.  Marshall complains that admission of this testimony was both erroneous and prejudicial.

Petitioner was afforded a *Prieur*/404-(B) hearing prior to trial, during which the investigating officer testified.  At that time, the State argued that the evidence of the October 13, 2000 incident between Marshall and his daughter should be admitted on the basis

18

that it showed the defendant's motive, intent and lack of mistake in committing both of his crimes.[14]  The defense argued that the nature of the two crimes was different, the evidence was not relevant with regard to an issue in contention and it was highly prejudicial.[15]  The trial court, after hearing the officer's testimony and the arguments of counsel, ruled that the evidence of the October 13, 2000 incident would be admissible at trial.[16]

Louisiana law generally prohibits the admission of "other crimes evidence," that is, evidence of criminal conduct uncharged in the subject indictment, with exceptions for proving identity, system or res gestae. *Robinson v. Whitley*, 2 F.3d 562, 566 (5th Cir. 1993), *cert. denied*, 510 U.S. 1167, 114 S. Ct. 1197, 127 L. Ed.2d 546 (1994), *citing State v. Prieur*, 277 So.2d 126, 128 (La. 1973).  In Louisiana, evidence of other crimes can be admitted as res gestae or to show intent, knowledge or system, but not to show motive.  *Webb v. Blackburn*, 773 F.2d. 646, 652 (1985).  However, the U.S. Fifth Circuit has ruled that other crimes evidence admitted to show motive, in violation of Louisiana evidentiary rules, does not rise to the level of a constitutional violation.  *Id.*

---

[14]See State Rec. Vol. 2, Transcript of "404-B Hearing" held January 7, 2002 at p. 4, and  p. 37-38.  Therein, the State argued that the other crimes evidence was admissible under Rule 404(b) of the Louisiana Rules of Evidence because it showed the motive of defendant, i.e., that whenever defendant felt he was losing control over the women in his life, he would discipline them through physical abuse. The State also argued that defendant's intent to "discipline" and lack of mistake was made clear by the similarity between the two crimes.

[15]See State Rec. Vol. 2, Transcript of "404-B Hearing" at pp. 38-39.

[16]See State Rec. Vol. 2, Transcript of "404-B Hearing" at p. 40.

Marshall raised his claim that "other crimes" evidence was erroneously admitted when he filed his direct appeal.  The Louisiana Court of Appeal, Fifth Circuit found that the evidence of the October 13, 2000 incident was improperly admitted under Louisiana law but that the admission of this evidence was harmless error.   With regard to a harmless error analysis, the Louisiana Fifth Circuit stated:

> Comparing the charged offense to the legal requirements of La. R.S. 14:44.1, we conclude that the record supports the conclusion that defendant went to Ms. Smith's mother's house and enticed her to accompany him, her son and Miss Lewis back to his house.  Once there, he physically abused Ms. Smith by grabbing her into the house by her hair, beating her with a stick while children (were) present in the home.  He then locked her in a bedroom from which she could not escape.  Further, she had no keys to the house and no way to call anyone for help.  Regardless of his reasons for doing so, his conduct represents a violation of that statute.   Thus we believe the guilty verdict was not attributable to the other crimes evidence, but is amply supported by the record.

*State v. Marshall*, 841 So.2d 866, 872 (La. App. 5th Cir. 2003).

Assuming that the state court was correct in finding that the other crimes evidence was wrongfully admitted, this court also finds that the admission of such evidence was a harmless one.  Under *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), a constitutional trial error is not so harmful as to entitle a defendant to habeas relief unless there is *more* than a mere reasonable possibility that it contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict . *Tucker v. Johnson*, 242 F.3d 617 (5th Cir.), *cert. denied*, 533 U.S. 972, 122 S. Ct. 18, 150 L. Ed.2d 800 (2001). However, if the court is in "virtual equipoise" as to whether the error was harmful, the court

must conclude that it was.  *Id.*

The evidence which supported the jury's guilty verdict included the victim, Shedanna Smith's testimony that on March 1st, 2001, Marshall pulled her against her will inside his house, dragging her by the hair. (Tr. at 118.)[17]  Once inside, Marshall threw her on the couch, punched her in the face and beat her with a stick. He dragged her into the room where his four daughters and one son witnessed his continued abuse. (Tr. at 120).  Marshall continued to hit her and cut off her braids and cut off her press-on nails. (Tr. at 121) The victim testified she was in a lot of pain so Marshall gave her a pain killer and made her lie down in his room. The next morning, after defendant left the house, the victim reported that she tried to leave but found all the doors locked and burglar bars on the windows.  She did not have a key with her, there was no phone and her personal cell phone had been taken away by Marshall a couple of months prior to the date of the crime.  The victim also testified that she did not know how to use the e-mail. (Tr. 122-126). The victim was unable to leave the residence until an officer came upon the scene on the afternoon of March 2, 2001. (Tr. 126-128). None of this testimony was undermined during defense counsel's cross-examination of the victim.

Marshall's daughter, Bianca Lewis also testified about the events of March 1st, 2001, corroborating the victim Shedanna Smith's testimony.  She reported that she witnessed the defendant hitting the victim, punching the victim in the face, and bringing the victim into the

---

[17]All transcript citations are referencing the Trial Transcript, State Rec.Vols. 2 & 3.

room with the children, where Marshall continued to beat Ms. Smith.  Ms. Lewis saw the defendant cut off the victim's hair and nails.  She also testified that the victim was taken into the house against her will by Marshall. Ms. Lewis bolstered the victim's claim that Marshall had locked her inside the house and that there were burglar bars on the windows. She testified that the front and back doors could be locked with a key.  The front door was locked but she wasn't sure if the back door was as she never checked it (Tr. at pp. 58-64).

Officer LaBruzza's testimony also further supported the victim's testimony.  Upon investigating a police dispatch call, he went to Marshall's residence on March 2, 2001.  Upon entering the house, he engaged in a struggle with Marshall. He then found the victim with injuries to her right eye, and bruises on her body, legs and back. He also found her hair extensions on the ground outside the residence .  He photographed the bedroom where the victim was kept, noticing burglar bars on the windows that only a small child would be able to fit through. He testified that the locks on the doors were the type that could only be unlocked from the outside.  He further reported that there was no telephone in the house, and the only cell phone found belonged to David Marshall (Tr. at pp. 26-31, 32-45).

Marshall's only "defense" to the charges were that the victim could have gotten out of the house if she really wanted to and that he was under stress and his physical assault upon the victim was part of a boyfriend/girlfriend disagreement. He did not deny that the physical abuse occurred.

Given this strong evidence of defendant's guilt of the charged offense of second

22

degree kidnapping, as defined in La.R.S. 14:44.1,[18] this court cannot say that admission of the "other crimes" evidence substantially contributed to the verdict.  This is not to minimize the fact that the State discussed the "other crimes" evidence in its opening statement and dwelled upon testimony regarding the "other crimes" evidence for a significant portion of the trial.  Although the court does not have a copy of the closing arguments made in this case, it is also highly probable that the State discussed the evidence of the beating sustained by Bianca Lewis at the hands of her father during the closing argument.  However, the testimony of the victim itself would have been sufficient under Louisiana law to sustain the verdict. Here, it is supported by the testimony of the investigating officer as well as the testimony of Marshall's daughter, Bianca Lewis.  Although it cannot be said that the jury ignored the "other crimes" evidence when deliberating, the evidence of defendant's crime against the victim, Shedanna Smith, easily stands on its own, without reliance upon the "other crimes" evidence submitted. Marshall fails to show this court that the erroneous submission of "other crimes" evidence was "a crucial, highly significant factor in the defendant's conviction". *Wood*, 503 F.3d at 414.  Thus,  Marshall is not entitled to federal habeas relief on this claim.

<u>Ineffective Assistance of Counsel</u>

_____

[18]La. R.S. 14:44.1 provides, in pertinent part: A. Second degree kidnapping is the doing of any of the acts listed in Subsection B wherein the victim is: ....(3) Physically injured or sexually abused.

Subsection B provides:  For purposes of this Section, kidnapping is (1) The forcible seizing and carrying of any person from one place to another; or (2) The enticing or persuading of any person to go from one place to another; or (3)The imprisoning or forcible secreting of any person.

In this claim, petitioner alleges that counsel was ineffective for failing to present an adequate defense, failing to place evidence before the jury that the victim was lying when she said she could not leave the house, and failing to object when the prosecutor asked leading questions. He also complains that counsel allowed perjured testimony to be admitted, and failed to object when the prosecutor allegedly had testimony stricken from the record in an effort to get witnesses to say what he wanted them to say. All of these claims are refuted by the record before this court and by the fact that petitioner cannot substantiate any of his claims.

Issues of ineffective assistance of counsel raise mixed questions of fact and law. *Virgil v. Dretke*, 446 F.3d 598, 604 (5th Cir. 2006).  Therefore, petitioner is entitled to *habeas* relief on a claim of ineffective assistance of counsel only when the state court unreasonably applied clearly established federal law to the facts of the case. The state trial court denied relief on Marshall's ineffective assistance of counsel claims, finding that the U.S. Supreme Court standard for ineffective assistance as set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) had not been met.[19]

In *Strickland*, 466 U.S. 668, 104 S.Ct. 2052, the Supreme Court established a  two prong test for evaluating claims of ineffective assistance of counsel:  a defendant seeking relief must demonstrate that counsel's performance was deficient and that the deficient

---

[19]See State Rec. Vol. 1, for a copy of the Order dated 3/30/04 denying post-conviction relief.

performance prejudiced the defense.  With regard to the performance prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688, 104 S.Ct. at 2064.  There is a strong presumption that an attorney's performance "falls within the wide range of reasonable professional assistance."  *Id.* at 689, 104 S. Ct. at 2065.  The defendant must overcome the presumption that the challenged action might be considered to be sound trial strategy.  *Id*.  (internal quotation and citation omitted).

In order to satisfy the prejudice requirement, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.  It is clear that even "professionally unreasonable errors by counsel do not warrant setting aside a conviction if the error had no effect on the judgment".  *Larsen v. Maggio*, 736 F.2d 215, 217 (5th Cir.), *cert. denied*, 469 U.S. 1089, 105 S. Ct. 598, 83 L. Ed.2d 707 ( 1984).

The burden of demonstrating prejudice rests on the defendant.  *Strickland* , 466 U.S. at 693, 104 S. Ct. at 2067.  The defendant must demonstrate that an alleged error actually had an adverse effect on the defense.  "The hypothetical or theoretical 'might have beens' at a trial do not justify the issuance of a Writ.  Rather, the petitioner must demonstrate that the 'might have beens' *would have been* important enough to affect the proceedings' reliability." *Larsen*, 736 F.2d at 218 (emphasis provided).  If the defendant makes an insufficient showing on either component of the ineffective assistance of counsel inquiry, it is not necessary to

examine the remaining prong of the test.  *Strickland,* 466 U.S. at 697, 104 S.Ct. 2069.

Petitioner complains that his lawyer failed to present an adequate defense, yet he fails to detail any defense that could have yielded a more beneficial result for him.  Marshall defended the charge of second degree kidnapping by arguing that the victim could have left the home, however, the jury did not accept this claim.  As was evident in Marshall's statement to the trial court and in his writings received by the trial court before sentencing, his only other defense to his criminal actions was that he was only applying "discipline" to his family to keep them from being out of control.[20]  Since such a defense does not in any way excuse the physical beating and kidnapping of the victim, and since Marshall offers no better defense that he believes counsel should have pursued, he fails to establish that his attorney was ineffective.

With regard to his attorney's alleged failure to present the jury with evidence that the victim could have escaped from the house where Marshall was keeping her captive, the record shows that counsel attempted to present exactly that type of evidence.  Counsel questioned Bianca Lewis, for example, about the availability of the internet to the victim and whether the back door was actually locked. Similarly, the defense put Marshall's brother on the witness stand to testify that the burglar bars were not installed by the defendant, and to report that the back door of the house where the victim was taken was "never really

---

[20]See State Rec. Vol. 3, Transcript of Proceeding dated January 23, 2002 at pp. 2-19.

locked".[21] The fact that the bulk of the witness testimony did not support Marshall's account of what happened is not due to the deficiencies of his counsel.

Petitioner also asserts that the prosecutor asked leading questions which were not objected to by defense counsel. He fails, however, to specify the particular questions asked at trial or to explain how he was prejudiced by counsel's failure to object. Moreover, he fails to pinpoint where in the record that the prosecutor asked for testimony to be stricken nor does he offer an explanation of how such actions prejudiced him. As for the alleged perjured testimony which counsel allowed to be admitted, this court has already discussed and rejected this claim earlier as procedurally defaulted in this Report & Recommendation. Moreover, nothing offered by petitioner establishes that the challenged testimony was actually false or that the State knew the testimony to be false.[22]

In sum, petitioner fails to establish that his attorney did not meet the requirements of an effective advocate under *Strickland*. A review of the trial record as a whole reveals that his lawyer ably represented him and attempted to mitigate Marshall's actions with evidence that he was a good father who was trying to maintain order in his household albeit in a misguided fashion. Defense counsel cross-examined the state's witnesses and attempted to

---

[21]See State Rec. 3, Trial Transcript at pp. 203 & 209.

[22]To set aside a conviction based upon perjured testimony, petitioner must show that 1) the witness gave false testimony; 2) the falsity was material in that it would have affected the jury's verdict; and, 3) the prosecution used the testimony knowing it was false. *Reed v. Quarterman*, 504 F.3d 465 (5th Cir. 2007), citing *May v. Collins*, 955 F.2d 299, 315 (5th Cir. 1992).

highlight any discrepancies and undermine the victim's credibility before the jury . Petitioner

fails to show that the state court's decision denying relief under *Strickland* was contrary to

Supreme Court law. This claim is without merit.

Excessive Sentence

Marshall complains that his sentence is excessive. He complains that the circumstances

of his crime and his lack of any prior criminal history make the sentence of fifteen years

disproportionate to the crime.

Marshall was sentenced initially to a term of twenty years imprisonment.[23] He

subsequently appealed that sentence to the Louisiana Court of Appeal, Fifth Circuit.[24]  That

court found that the sentencing judge had wrongly considered evidence of petitioner's "other

crimes", namely his assault upon his daughter, Bianca Lewis, when making her sentencing

decision.  Accordingly, the court remanded the case for re-sentencing.  The trial judge then

re-sentenced Marshall to a term of fifteen years.[25]

The State argues that, to the extent Marshall is attempting to challenge his fifteen year

sentence, the issue is unexhausted.  Correctly, the State asserts in its Supplemental Response,

"[R]espondent submits that petitioner failed to exhaust this claim, as petitioner did not appeal

---

[23]See State Rec. Vol. 1, Commitment Order dated January 22, 2002.

[24]*State v. Marshall*, 841 So.2d 866 (La. App. 5th Cir. 2003).

[25]See State Rec. Vol. 1, Commitment Order dated June 18, 2003.  As the State argues, Marshall is, therefore, factually incorrect in arguing that his sentence of *twenty* years is excessive. To the extent he is challenging his twenty year sentence, the issue is moot since he was re-sentenced.

the sentence imposed on remand, and as it does not appear that petitioner's excessive sentence claim was presented to the Louisiana Supreme Court in a procedurally proper manner."[26] The State also admits, however, that in its initial response to this court, exhaustion was conceded. The State's initial response may very well be a waiver of the exhaustion defense. *See* 28 U.S.C. §2254(b)(3). Additionally, the court always has the discretion to address the merits of an unexhausted claim provided relief is not granted. *See* 28 U.S.C. §2254(b)(2). Accordingly, the court finds it appropriate to address the merits of Marshall's excessive sentence claim.

In raising the issue of excessive sentence, Marshall argues that the sentence imposed violates the Louisiana Constitution, state procedural rules and state jurisprudence. To the extent petitioner is arguing that his sentences are excessive under Louisiana law, that claim is not cognizable in this federal proceeding. Federal *habeas corpus* relief is available only for violations of federal constitutional law and, therefore, this Court does not sit to review alleged errors of state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998). Accordingly, this Court will not review the state court's findings regarding the constitutionality of petitioner's sentence under state law.

Moreover, federal courts accord broad discretion to a state trial court's sentencing decision that falls within statutory limits. *Haynes v. Butler*, 825 F. 2d 921, 923-24 (5th Cir.

---

[26]Fed. Rec. Doc. 12, Supplemental Response to Habeas Petition at p. 21.

1987); *Turner v. Cain*, 199 F.3d 437 (5th Cir. 1999) (unpublished) (sentence was within Louisiana statutory limits and within trial court's discretion, therefore petitioner failed to state cognizable habeas claim for excessive sentence). If a sentence is within the statutory limits, a federal habeas court will not upset the terms of the sentence unless it is grossly disproportionate to the gravity of the offense. *Harmelin v. Michigan*, 501 U.S. 957 (1991); *Solem v. Helm*, 463 U.S. 277 (1983). Convicted of the crime of second degree kidnapping, Marshall was exposed to a punishment range of not less than five years and not more than forty years, with at least two years of the sentence imposed to be served without benefit of parole, probation or suspension of sentence. *See* La. R.S. 14:44.1. He received a sentence of fifteen years.

Only when a threshold comparison of the crime committed to the sentence imposed leads to an inference of "gross disproportionality," does a court then consider (a) the sentences imposed on other criminals in the same jurisdiction; and (b) the sentences imposed for commission of the same offense in other jurisdictions. *Smallwood v. Johnson*, 73 F.3d 1343, 1346-47 (5th Cir. 1996)*; McGruder v. Puckett*, 954 F.2d 313, 316 (5th Cir. 1992).

Based upon the record before this court, Marshall's sentence does not appear to be disproportionate to his crime. In its initial reasons for sentencing Marshall, the trial court made the following excerpted findings:

> In this case, Mr. Marshall absolutely – I am convinced that Mr. Marshall, as reflected in his writings, is utterly convinced that he did nothing wrong . . .

Mr. Marshall does not understand the mores of American society. Mr. Marshall makes a good point. Maybe his family was out of control. Maybe his ex-wife was, or his girlfriend or whatever she was, was behaving in a manner that was displeasing to him.

A man in this country does not thereby gain the right to restrain a woman against her will, locked in a room without a key, or a telephone, or means of escape. A man in this country, within the social mores of our civilization as distinguishable of those of some other, is not permitted by the rules of criminal law to violently correct or discipline [ ] a woman with whom he has an intimate relationship ....

Mr. Marshall does not understand that . . .and I am firmly convinced that Mr. Marshall will not, without a long period of time in which to reflect away from the individuals upon whom he has visited this violence, have any chance of coming to grips with the notion that this is not permissible or legal within the confines of American society. [27]

Based upon the foregoing, the sentencing judge was obviously concerned that Mr. Marshall was somehow not recognizing the seriousness of his crime and was showing no remorse for having committed it. The judge believed that a substantial sentence was therefore in order. Additionally, petitioner's crime was a crime of serious violence.[28] Not only did petitioner beat and abuse the victim in this case, he humiliated her, cutting off her

---

[27]State Rec. Vol. 3, Transcript of proceedings dated January 23, 2002 at pp. 18-19.

[28]Under Louisiana law, a crime of violence is defined as an offense that has as an element, the use, the attempted use, or threatened use of physical force against the person of another. La. R.S. § 14:2(B). Louisiana law lists second degree kidnapping as a crime of violence. La. R.S. §14:2(B)(16).

braids and imprisoning her against her will.

The United States Supreme Court has stated that the Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences that are "grossly disproportionate" to the crime.  *Ewing v. California*, 528 U.S. 11, 23 (2003) (*citing Harmelin*, 501 U.S. at 1001 (Kennedy J., concurring in part and concurring in judgment)).  The Supreme Court has recognized that only the rare case will reach the level of gross disproportionality.  *Id.*, 538 U.S. at 30 (*quoting Harmelin*, 501 U.S. at 1005).  As noted above, that disproportionality is judged by whether similar sentences have been imposed for the same offense.  *Smallwood*, 73 F.3d at 1346-47.

This court's research of factually similar cases in the same jurisdiction in which petitioner was convicted shows that defendants who have committed the crime of second degree kidnapping in a domestic situation have, for the most part,  fared worse in sentencing than did Marshall.  *See*, *e.g. State v. Mathieu*, 960 So.2d 296 (La. App. 5th Cir. 2007)(one count of second degree kidnapping of defendant's estranged wife yielded a sentence of 30 years for first time offender); and, *State v. Brown*, 901 So.2d 492 (La. App. 5th Cir. 2005)(Second degree kidnapping during domestic violence incident resulted in a sentence of 30 years prior to the filing of a multiple bill).  In other jurisdictions, the following sentences were given:  *State v. Taves*, 861 So.2d 1444 (La. 2003)(25 year sentence for second degree kidnapping of domestic partner; defendant also received 10 years for false imprisonment; weapon involved); *State v. Reese*, 774 So.2d 1164 (La. App. 2nd Cir.

2000)(defendant with history of mental illness kidnapped ex-wife and child; received 10 year sentence for second degree kidnapping); *State v. Fontana*, 821 So.2d 571 (La. App. 2nd Cir. 2002)(15 year sentence for second degree kidnapping of estranged wife); and *State v. Gauthier*, 916 So.2d 314 (La. App. 3rd Cir. 2005)(35 years for second degree kidnapping and domestic violence). Based upon this review and the record before this court, petitioner's sentence is not so excessive as to violate the United States Constitution. Petitioner is not entitled to relief on his claim of excessive sentence.

Accordingly,

## **RECOMMENDATION**

For the foregoing reasons, IT IS RECOMMENDED that the federal habeas petition of David Marshall be DENIED WITH PREJUDICE.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions

accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this 25th day of April, 2008.


LOUIS MOORE, JR.
UNITED STATES MAGISTRATE JUDGE